IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| H. Freeman Belser, Esquire, as Personal Representative of the Estate ███████████ ██████; and Amy Williams, individually, | ) ) ) | C/A No. 3:16-0972-MBS |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER AND OPINION** |
| | ) | |
| Quest Diagnostics, Inc.; Athena Diagnostics, Inc.; and ADI Holdings, Inc., | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiffs Amy Elizabeth Williams, as the Personal Representative of the Estate ███████████ ██████ ("Decedent"),[1] and Amy Elizabeth Williams, individually (together, "Plaintiff"), filed this action in the Court of Common Pleas for Richland County, South Carolina, on February 24, 2016 against Defendants Quest Diagnostics, Inc. ("Quest"); Athena Diagnostics, Inc. ("Athena"); and ADI Holdings, Inc. (together, "Defendants").[2] Defendants removed the complaint on March 28, 2016 on the grounds of diversity jurisdiction.

This matter currently is before the court on Defendants' motions for attorney's fees, both of which are grounded on allegations of discovery abuse. Defendants' motion filed on October 15, 2020 arises out of Defendants' motion for sanctions against Plaintiff individually and her counsel,

---

[1] The current personal representative, H. Freeman Belser, Esquire, was substituted by order filed October 1, 2020.

[2] Quest Diagnostics is the parent company of ADI Holding Company, Inc., and owns 100% of the shares of ADI Holding Company. ECF No. 3. ADI Holding Company, Inc., is the parent corporation of Athena Diagnostics, Inc. and owns 100% of the shares of Athena Diagnostics, Inc. ECF No. 4.

which motion was granted during a two-hour omnibus hearing on September 29, 2020.[3] Plaintiff filed a response in opposition to Defendants' motion for attorney's fees on March 3, 2021, after inadvertently failing to file the response with the court but timely disseminating it to Defendants. Defendants filed a reply on November 5, 2020.

The second motion for attorney's fees arises from a motion for an order to show cause that was lodged against a material witness, Laurel Coons ("Coons"). Coons is or was a friend of Plaintiff[4] who provided advice to Plaintiff and Plaintiff's counsel. The motion for an order to show cause was granted at the September 29, 2020 omnibus hearing, and the order to show cause issued on October 13, 2020. There being no response to the order to show cause, Defendants moved for attorney's fees on November 24, 2020. Counsel for Coons filed a response in opposition on December 18, 2020; however, the response was withdrawn and counsel relieved on January 12, 2021 at the request of Coons. Coons, proceeding pro se, filed a response in opposition to Defendants' motion on February 11, 2021. Defendants filed a reply on February 18, 2021.

<u>BACKGROUND</u>

This case has a lengthy factual and procedural history. Briefly, Decedent began suffering febrile focal motor seizures beginning around four months of age. Decedent was treated by a pediatric neurologist who prescribed carbamazepine and lamotrigine. The administration of these medications was not effective.

---

[3]The court heard four discovery motions at the September 29, 2020 hearing.

[4]Plaintiff has known Coons since they were in high school. ECF No. 101-17, 3. Plaintiff went to a different college but then reconnected with Coons in 2008 after Decedent's passing. <u>Id.</u> at 4. They had a falling out in 2009 and then reconnected in 2010. Plaintiff commenced dating her current husband and stopped talking to Coons for a while. <u>Id.</u> at 6. They reconnected again in August 2014. <u>Id.</u> at 6. Their relationship now generally relates to the within litigation. <u>Id.</u> at 7.

2

Decedent's DNA was provided to Athena in May 2007 for an SCN1A DNA Sequencing Clinical Diagnostic Test. ECF No. 165-11. An SCN1A DNA Sequencing Clinical Report (the "2007 Report") was issued by Athena on June 30, 2007. ECF No. 165-12. The 2007 Report noted that Decedent possessed a DNA mutation in the SCN1A gene classified as a "#4: variant of unknown significance" ("VUS").[5] Decedent was treated with increasing doses of carbamazepine. Tragically, Decedent died on January 5, 2008 following a traumatic seizure.

On or about September 29, 2014, Plaintiff learned that the "variant of unknown significance" identified on the 2007 Report had since been reported as pathogenic. Decedent's variant was reanalyzed by Athena and a revised report was issued on January 30, 2015 (the "2015 Report."). The 2015 Report indicated that "[a]nalysis of this individual's SCN1A gene identified a DNA sequence variant that has been reported in the literature to be associated with SMEI [Severe Myoclonic Epilepsy of Infancy] or SMEB [borderline SMEI], the severe phenotypes associated with SCN1A mutations." ECF No. 165-27, 2. SMEI is also known as Dravet's syndrome. Carbamazepine is contraindicated for Dravet's syndrome. According to Plaintiff's expert witness, Decedent's neurologist would have managed Decedent differently had Athena classified Decedent's mutation as a pathogenic variant in 2007. Plaintiff's expert opined that, had Decedent not been prescribed carbamazepine, he would have been more resistant to seizures and therefore, more likely than not,

---

[5]According to the 2007 Report, "Since these types of sequence variants are similar to those observed in both disease-associated mutations at other nucleotide positions and in benign polymorphisms, the nature of this variation precluded clear interpretation. These DNA sequence variants may or may not alter the functional aspects of the SCN1A gene and/or its protein product. While methodologically accurate, the results of this analysis cannot be definitively interpreted due to the absence of published studies correlating these variant(s) with clinical presentation and/or pathology. Therefore, based on this single analysis, it is not possible to conclude with any reasonable degree of clinical certainty at this time whether or not this variant is associated with the phenotype in question." ECF No. 165-12, 2.

he would not have experienced the severe seizure that caused his death. ECF No. 153-9, 9-10.

Plaintiff filed an amended complaint on June 2, 2016, in which she asserted claims of negligence/gross negligence resulting in the wrongful death of Decedent, a survival action based on the suffering Decedent experienced before death, and causes of action for negligent misrepresentation, constructive fraud, and violation of the South Carolina Unfair Trade Practices Act.  By order filed October 18, 2018, the court determined that Plaintiff's causes of action for wrongful death, survivorship, negligent misrepresentation, and constructive fraud sounded in both medical malpractice and ordinary negligence.  To the extent Plaintiff's claims sounded in medical malpractice, the court concluded that Plaintiff's claims are barred by the applicable six-year statute of repose.  See S.C. Code Ann. § 15-79-110(6).  The question became, then, whether Plaintiff could show the failure to identify Decedent's variant in 2007 as pathogenic was the result of simple negligence, such as administrative error.  By order filed November 5, 2020, the court concluded that no reasonable jury could find Defendants erred in classifying Decedent's variant as a VUS, or that any misclassification was the result of nonmedical, administrative, ministerial, or routine care.[6]  The court entered judgment in favor of Defendants as to all causes of action.

<u>MOTIONS FOR ATTORNEY'S FEES</u>

Pursuant to Fed. R. Civ. P. 37(a)(5)(A),

(A) *If [a Motion to Compel] Is Granted (or Disclosure or Discovery Is Provided After Filing)*.  If the motion is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. . . .

---

[6]The court also found that Plaintiff failed to show a violation of the SCUTPA.

4

When determining which of the Rule 37 sanctions is appropriate, courts in the Fourth Circuit consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."  S. States Rack and Fixture, Inc. v. Sherwin-Williams, Co., 318 F.3d 592, 597 (4th Cir. 2003).

Attorney's fees are calculated by establishing a loadstar amount, which is comprised of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The court must consider twelve factors in calculating the loadstar amount:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008).[7]

After completing the loadstar calculation, the court should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.  Id. at 321.

I.

---

[7]These factors are also known as the Johnson/Barber factors.  See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) (adopting twelve factor test set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989)).

A.    <u>Defendants' Motion for Fees and Costs From Plaintiff and Plaintiff's Counsel[8]</u>

In their motion for sanctions filed February 10, 2020, Defendants alleged that Plaintiff and

her attorneys intentionally acted in bad faith during the discovery process, including by:

- Systematically destroying relevant evidence from multiple sources, even after discovery was served and even after concerns were raised about Plaintiff's destruction of evidence;

- Failing to instruct Plaintiff, her experts, and Laurel Coons of their obligation to preserve relevant information, leading to the reckless destruction and loss of relevant information;

- Deliberately and repeatedly withholding relevant documents from various data sources and key witnesses;

- Refusing to provide truthful and complete discovery responses, including the identification of at least 29 witnesses who had information related to this case;

- Stonewalling and hindering Defendants' efforts to conduct meaningful discovery at every turn;

- Violating this Court's Discovery and Confidentiality Orders; and

- Intentionally misleading Defendants and the courts about a crucial fact in this case –the identity of the biological father of Plaintiff's son.

ECF No. 123-1, 4.

Defendants asserted that they had expended resources investigating Plaintiff's actions,

sending discovery deficiency notices, and preparing multiple motions to compel. Defendants stated

that Plaintiff's destruction and concealment of key evidence handicapped their ability to develop the

case and prepare for trial.

The court held a hearing on September 29, 2020 in which Defendants recounted that

---

[8]Defendants seek fees and costs against Plaintiff in her individual capacity and against her attorneys, and not against Decedent's estate. ECF No. 212.

documents of Plaintiff and her witnesses, including expert witnesses, were lost or destroyed from six different sources: (1) Plaintiff's text messages; (2) Plaintiff's hard drives; (3) Plaintiff's Dropbox account; (4) Coons' documents; (5) Plaintiff's expert Robert M. Cook-Deegan, M.D.'s documents; and (6) Plaintiff's expert Max Wiznitzer, M.D.'s documents. According to Defendants, Plaintiff's attorneys did not issue a litigation hold or otherwise properly caution Plaintiff and other persons closely involved in the litigation to not destroy electronically stored information ("ESI") and other documents pertaining to this litigation. Defendants asserted that, "[i]n addition to not preserving documents, the plaintiff[] affirmatively purged at least 348 documents from her Dropbox account at the exact time that arrangements were being made for the forensic examination of her devices and accounts and after she had postponed that examination at the last minute, based on an outright lie that she and her husband were going to be out of town the weekend schedule[d] for the expert to take possession of the devices." ECF No. 187, 32. Also, according to Defendants, documents were sent to Coons in violation of the court's confidentiality order. Defendants asserted that Plaintiff's counsel improperly withheld over 600 documents containing communications with Coons based on their claim that she was their consulting expert, a role that was denied by both Coons and Plaintiff. Defendants contended that Coons provided approximately 9,000 documents to Plaintiff's counsel that were not produced to Defendants. Defendants also asserted that it was not until Plaintiff's deposition that they discovered Plaintiff had been deleting text message and having her computer hard drives wiped throughout the lawsuit. Id. at 33-36.

Defendants stated at the hearing that after Plaintiff's deposition the parties agreed to a protocol for a forensic examination of Plaintiff's devices and electronic account. According to Defendants, Plaintiff put off the forensic examination at the last minute, claiming that she and her

husband had to be out of town.  Defendants hired a process server to check Plaintiff's house, where

Plaintiff and her husband were discovered at home.  Defendants state that, during that time period,

Plaintiff moved or deleted 348 documents from her Dropbox account.  Id. at 37-38.

The court determined that the general duty of candor to the court had been breached and that

the motion for sanctions should be granted.  The court proposed to give the jury an adverse inference

instruction and bar Plaintiff from using any information at trial that may have been withheld.  The

court further awarded Defendants attorney's fees and costs in connection with preparing the motion

and any steps Defendants took to overcome the lack of Plaintiff's providing discovery.  Id. at 55.

The court left it to Plaintiff and Plaintiff's counsel to determine how to apportion the award.

Defendants' counsel seek $121,998.30 for preparing, prosecuting, and arguing the motion

for sanctions.  In support of their motion, Defendants' counsel inform the court that the following

fees were billed to and paid by Defendants to WYCHE, P.A. ("Wyche") in conjunction with their

representation:

| ATTORNEYS | YEAR OF PRACTICE | HOURS WORKED | BILLED PER HOUR | BILLED AMOUNT |
|---|---|---|---|---|
| WALLACE K. LIGHTSEY | 1986 | 58.90 | $435 | $25,621.50 |
| JOHN C. MOYLAN | 1988 | 25.70 | $415 | $10,665.50 |
| MARK S. SIDOTI | 1988 | 12.70 | $549 | $ 6,972.30 |
| RACHAEL L. ANNA | 2007 | 157.10 | $350 | $54,985.00 |
| LUCY DINKINS | 2013 | 13.10 | $300 | $ 3,930.00 |
| PARALEGALS | | | | |
| MARY B. RAWLS | | 123.90 | $160 | $19,824.00 |
| TOTAL | | | | $121,998.30 |

1.    Reasonableness of the rates.  Defendants' counsel  state their standard 2020 attorney

8

hourly rates were reduced by approximately twenty-two percent, in part because the Wyche law firm had not increased its rates for Defendants since the firm was engaged in 2015. In any event, Defendants' counsel contend their rates comport with prevailing rates for attorneys of similar ability and experience in large regional law firms in South Carolina. Defendants' counsel also note that Defendants incurred fees from Mr. Sidoti from the Gibbons P.C. law firm, where Mr. Sidoti is based out of the New York office. His hourly rate was reduced by approximately fifteen percent.

      2.    <u>Reasonableness of the hours worked</u>. Defendants state the number of hours reflects the highly detailed nature of the work and the large volume of documents involved. Defendants contend that, because Plaintiff refused to turn over documents in response to recovery requests, Defendants were forced to review 700,000 records collected during the Rule 34 Inspection in order to identify approximately 10,000 relevant documents.

      Defendants' counsel state that the fees incurred were the direct result of Plaintiff's misconduct, even after Defendants filed the motion for sanctions. Specifically, Defendants argue that:

> During the review of Plaintiff's relevant documents and the depositions of Plaintiff and other key witnesses, Defendants uncovered the following misconduct: (1) Plaintiff deleted her text messages on her phone; (2) Plaintiff had her computer hard drives wiped; (3) Plaintiff and her attorneys failed to take reasonable steps to preserve ESI; (4) Plaintiff and her attorneys violated the Stipulated Discovery Plan and Consent Order by refusing to produce communications with Brian Millare; (5) Plaintiff and her attorneys violated the Confidentiality Order by both producing Defendants' documents to a lay witness and by failing to have the witness sign the Acknowledgement form; (6) Plaintiff's counsel failed to turn over Plaintiff's relevant Hotmail and Coastal Carolina emails; (7) Plaintiff destroyed relevant documents in her Dropbox account days before the Rule 34 inspection; (8) Plaintiff improperly withheld communications stored on her Surface Pro; (9) Plaintiff and her attorneys failed to identify 29 individuals in response to Defendants' interrogatory requests; (10) Plaintiff's counsel improperly withheld documents from Coons's subpoena response; (11) Coons deleted relevant files and lost access to other relevant emails

from her Duke account; (12) Dr. Wiznitzer destroyed relevant documents; (13) Dr. Cook-Deegan destroyed relevant documents; (14) Plaintiff's attorneys refused to produce relevant documents in the possession of Cook-Deegan; and (15) Plaintiff and her attorneys provided improper and incomplete discovery responses related to the paternity of decedent. The repeated discovery violations warrant the fees sought by Defendants.

ECF No. 195, 7-8 (internal citations omitted).

       3.   <u>Johnson/Barber Factors</u>.

         a.   <u>Time and labor expended</u>.  Defendants's counsel state that they were required to expend significant resources conducting discovery because Plaintiff and her attorneys failed to cooperate.

         b.   <u>Novelty and difficulty of the questions raised</u>.  Defendants' counsel assert that their experience in digital forensic investigations and electronic discovery enabled them to cull through over 700,000 records and determine the identity of documents and information withheld or destroyed by Plaintiff.

         c.   <u>Skill required to properly perform the legal services</u>.  Defendants' counsel contend that they were uniquely positioned to offer skills in professional ethics, complex electronic discovery, and forensic analysis.  According to Defendants, Mr. Lightsey has served as Chair of the South Carolina Commission on Lawyer Conduct and served as a special master in cases involving complex discovery issues.  Mr. Mosely serves on the South Carolina Commission on Lawyer Conduct.  Ms. Anna has particular expertise in the area of complex electronic discovery, and is a member of The Sedona Conference Working Group on Electronic Document Retention and Production.  Mr. Sidoti is the Co-Chair of Gibbons E-Discovery Task Force in New York and a faculty member of the Georgetown University School of Law Ediscovery Training Academy.  He

has also served as the Chair of the Electronic Discovery Committee for the Defense Research Institute.

       d.     <u>Preclusion of other employment opportunities</u>.  Defendants' counsel state this is not a significant factor in this case.

       e.     <u>Customary fee for such services</u>.  Counsel submit that the fees are justified by counsel's considerable experience, and that they charged reduced rates by an average of twenty-two percent from their standard rates.  Defendants' counsel state that their rates are equivalent to rates customarily charged for similar work performed in South Carolina.

       f.     <u>Whether the fee is fixed or contingent</u>.  Defendants' counsel state this is not a significant factor in this case.

       g.     <u>Time limitations imposed by client or circumstances</u>.  Defendants' counsel contend that they were constrained in their preparation during the case because they received voluminous documentation only three weeks before the close of discovery, and after deposing eight witnesses, including Plaintiff.  Counsel further assert that the work required to expose the conduct complained of precluded counsel from devoting resources to other matters in this case.

       h.     <u>Amount in controversy and the results obtained</u>.  Defendants' counsel argue that Plaintiff and her attorneys impaired Defendants' ability to conduct factual and expert discovery and prepare for trial.  Defendants state they were successful in prosecuting their motion for sanctions as a direct result of the efforts expended by counsel.

       i.     <u>Experience, reputation, and ability of the attorneys</u>.  Counsel point out that Wyche has been recognized by American Lawyer as one of the Thirteen Great Small Law Firms in the United States.  Wyche has an AV-rating from Martindale-Hubble and has been recognized as a

11

Band 1 law firm for commercial litigation by Chambers USA and a Tier 1 law firm in commercial litigation and six other litigation categories by U.S. News – Best Lawyers. Defendants' counsel further assert that the attorneys who worked on this matter have impeccable credentials, have earned degrees from top tier institutions, and have experience clerking for federal judges.

j.     Undesirability of the case. Defendants state that the filing of the motion for sanctions was an undesirable and unexpected undertaking. Defendants state they did not anticipate that Plaintiff and Plaintiff's counsel would disregard the court's authority and intentionally obfuscate and obstruct the judicial process.

k.     Nature and length of the professional relationship. Defendants state that Wyche has represented Defendants since 2015. Mr. Sidoti has represented Defendants since 1990.

l.     Fee award in similar cases. Defendants recount numerous cases wherein large awards of attorney's fees were made as a consequence of discovery misconduct.

4.     Costs Associated with Forensic Expert

Defendants seek $14,725.01 in costs related to work performed by Reliance Forensics, LLC ("Reliance"). Defendants state that forensic services were provided by Clark Walton and Micah Stugis. According to Defendants, Walton was a cyber threat analyst and technical project manager for the Central Intelligence Agency. Sturgis is a former detective and digital forensic examiner for the Cleveland County Sheriff's Office in North Carolina. Both hold multiple forensic certifications. Defendants assert that Reliance's efforts included an extraction report of a cell phone and a forensic image of a Surface Pro, Hotmail and Gmail accounts, a Dropbox account, and social media accounts.

B.     Plaintiff's Response In Opposition

Plaintiff argues the amount of fees requested is unreasonable. Plaintiff contends that four

of Defendants' counsel and a paralegal each billed the full time for attending the two-hour hearing

on September 29, 2020 that included three motions in addition to Defendants' motion for sanctions.

Plaintiff points out that Defendants claim that at least three attorneys billing between $300 and $549

per hour spent 104.5 hours exclusively on drafting Defendants' motion for sanctions, not including

their research, review, and correspondence hours billed.  Plaintiff contends that Defendants' motion

for fees and costs is submitted in bad fath and should be scrutinized for lack of candor to the court.

Plaintiff further argues that the award sought is unreasonable under the Johnson/Barber

factors.  Plaintiff notes that five attorneys and a paralegal purportedly spent 391 hours preparing a

motion for sanctions that was argued in less than one hour on a conference call hearing.  Plaintiff

contends Defendants failed to exclude hours spent on unsuccessful claims, and that the adverse

inference instruction the court agreed to had value to Defendants that should be considered in

granting the motion for attorney's fees.  Plaintiff further asserts that, when it became evident that she

was having storage issues with ESI, she complied as soon as practicable with requests to turn over

devices and access to storage.  Plaintiff states that she is a teacher with limited assets to pay the

attorney's fees and costs demanded by Defendants.  Plaintiff also contends that Defendants' forensic

expert fees should be mitigated or excluded.  Plaintiff's counsel contends that Plaintiff was not

versed in archiving ESI and that she did not intentionally destroy evidence she deemed beneficial

to Defendants.

C.     Defendants' Reply

In their reply, Defendants argue that Plaintiff underestimates the amount of effort counsel

devoted to explaining the broad scope of the discovery misconduct, which, as the court recognized

in granting the motion for sanctions, included intentionally destroying and withholding relevant

13

evidence.  Defendants reiterate that they expended substantial time and resources culling evidence from Plaintiff's computer hard drives, cell phone, Surface Pro, Dropbox and OneDrive accounts, social media accounts, iPad, Hotmail and Google accounts, AT&T cell phone records, among other sources.  Defendants also argue that Plaintiff's counsel must be held accountable for preventing Plaintiff from disposing of ESI and for themselves participating in the misconduct.  Finally, Defendants contend that they were required to engage the services of a forensic expert because of Plaintiff's and her counsel's misconduct.

D.     Disposition of the Motion

The court continues to be troubled by the extent to which both Plaintiff and Plaintiff's counsel not only manipulated the discovery process but have failed to be fully truthful and candid with the court.  Plaintiff's counsel in her response in opposition lays the fault for missing data solely at the feet of Plaintiff without acknowledging their role, as found by the court at the hearing on Defendants' motion for sanctions.  Plaintiff's response in opposition continues to assert Plaintiff's conduct was unintentional and negligent after the court has found otherwise.

The court has reviewed Defendants' motion for attorney's fees and disallows the following entries.  The disallowed entries reflect efforts relating to all four discovery motions argued on September 29, 2020, and the court is unable to make a fair evaluation of the time expended specifically on the motion for sanctions.  See Hensley v. Eckerhart, 416 U.S. 424, 441 (1983).

| | |
|---|---|
| Mr. Lightsey: | Entries 6, 7, 9, and 10 on ECF No. 210-5, 4.<br>17.1 hours x $435.00 = $7,438.50 |
| Mr. Moylan: | Entries 5, 6, 7, 10, 11,12 on ECF No. 210-5, 5.<br>3.0 hours x $415.00 = $1,245.00 |
| Ms. Dinkins: | Entries 10 and 11 on ECF No. 210-5, 15 |

14

|  | 0.3 x $300.00 = $90.00 |
| Ms. Rawls: | Entries 6, 7, 8, 9, 10 on ECF No. 210-5, 18<br>7.6 x $160.00 = $1,216.00 |
|  | Entries 1, 5, 7, 8, 9, 13 on ECF No. 210-5, 19<br>4.7 x $160.00 = $752.00 |
|  | Entries 1, 2, 3 on ECF No. 210-5, 20<br>1.7 x $160.00 = $272.00 |

The following entries are reduced to reflect time spent attending the court's September 29, 2020 hearing and arguing the motion for sanctions. Relying on the length of the argument reflected in the transcript, the court will allow one hour for oral argument. Thus, the following entries are reduced:

| Mr. Lightsey: | Entry 11 on ECF No. 210-5, 4<br>1.1 x $435.00 = $478.50 |
| Mr. Moylan: | Entry 13 on ECF No. 210-5, 5<br>1.0 x $415 = $415.00 |
| Ms. Dinkins: | Entry 12 on ECF No. 210-5, 15<br>1.1 x $300.00 = $330.00 |
| Ms. Rawls: | Entry 4 on ECF No. 210-5, 20<br>1.2 x $160.00 = $192.00 |

The court also will reduce Mr. Sidoti's hourly rate as slightly above the prevailing market rate in the South Carolina District. See Rum Creek Coal Sales, Inc. v. Capterton, 31 F.3d 169, 175 (4th Cir. 1994). Given Mr. Sidoti's credentials, the court finds $500.00 per hour to be an appropriate rate.

| Mr. Sidoti: | Total hours billed on ECF No. 210-5, 5 = 12.7<br>12.7 x $500.00 = $6,350.00 |

In sum, Mr. Lightsey's fees are reduced by $7,917.00 ($7,438.50 + $478.50), for a total

compensation of $17,704.50 ($25,621.50 - $7,917.00). Mr. Moylan's fees are reduced by $1,660.00 ($1,245.00 + $415.00), for a total compensation of $9,005.50. Mr. Sidoti's fees are reduced by $622.30 ($6,972.30 - $6,350.00), for a total compensation of $6,350.00. Ms. Dinkins' fees are reduced by $420.00 ($90.00 + $330.00), for a total compensation of $3,510.00. Ms. Rawls' fees are reduced by $ 2,432.00 ($1,216.00 + $752.00 + $272.00 + $192.00), for a total compensation of $17,392.00 ($19,824.00 - $2,432.00).[9] The total attorney's fee award is $91,555.00. The court also finds the $14,725.01 in costs incurred by Defendants related to work performed by Reliance Forensics, LLC is reasonable. The grand total amount of fees and costs authorized by the court is $106,280.00.

The court next must apportion the fees between Plaintiff and Plaintiff's counsel, as it appears Plaintiff and her counsel have not done so. The court finds that Plaintiff's counsel must be held to a higher standard and that Plaintiff's counsel was responsible for ensuring Plaintiff's compliance with discovery rules and procedures, as well as court orders.[10] The court concludes that Plaintiff is responsible for forty percent of the award of attorney's fees, and Plaintiff's counsel is responsible for the remaining sixty percent. Therefore, Plaintiff is directed to pay to Defendants attorney's fees and costs in the total amount of $42,512.00. Plaintiff's counsel are directed to pay Defendants attorney's fees and costs in the total amount of $63,768.00.

---

[9]The court does not reduce Ms. Anna's claimed compensation of $54,985.00.

[10]For example, there is evidence that Coons and Plaintiff's experts were provided with confidential information but were not advised by Plaintiff's counsel of their obligations under the court's confidentiality order. ECF No. 211-7.

II.

A.    Defendants' Motion for Attorney's Fees Against Coons

Coons is a material witness who appears to have played an outsized role in this litigation. See, e.g., ECF No. 211-1 (various emails of Coons directing Plaintiff's attorneys). Coons drafted a number of legal documents and expert affidavits that contained misrepresentations bearing upon the legitimacy of Plaintiff's claims. Defendants allege that Coons evaded service of a subpoena for documents for five months, withheld and destroyed relevant information, failed to comply with a court order compelling her to produce documents, and improperly gained access to Defendants' proprietary documents in violation of the court's confidentiality order and then refused to destroy them. Defendants contend that Coons "engaged in repeated acts of foot-dragging, stalemating, and failures to comply[.]" ECF No. 211, 7.

On November 12, 2019, Defendants filed a motion to compel complete responses from Coons to Defendants' subpoena for documents. No response to the motion to compel was filed by either Coons or Plaintiff's counsel, who had denominated Coons as a consulting expert and were representing her for purposes of the subpoena. On April 2, 2020, the court granted Defendants' motion to compel a complete response from Coons to their subpoena for documents. Coons did not comply with the court's order. On June 22, 2020, Defendants filed a motion for an order to show cause why Coons should not be held in contempt and/or have sanctions imposed for failing to obey a court order. Coons retained separate counsel, who responded to the motion for an order to show cause on July 6, 2020. Coons argued:

1.    As indicated above, Coons is not a party to this action, nor is she an expert witness. Nevertheless, she has the utmost respect for the rule of law and the authority of this Court. As a lay witness, the Defendants should take care to

17

avoid imposing burdensome, invasive, and costly discovery requests upon Coons pursuant to Rule 45(d). However, they have failed to do so. Instead, Defendants insisted that Coons produce emails and text messages, with their corresponding attachments, in native format. This is a massive undertaking for one person, and it takes time and costs money to identify and produce responsive materials.

2.    Moreover, the Court's order directing Coons to produce documents was only entered on April 2, 2020. Defendants, however, misleadingly claim that Coons has ignored requests for responsive documents for over 15 months, when in fact this Court's order compelling her to produce documents has only been in place for 3 months. So while the Defendants may not have been pleased with the pace of production from Coons for the preceding 12 months, that is simply not relevant to the instant motion because Coons could not have engaged in contemptuous behavior during that time because there was no order from the Court in place.

3.    Importantly, the 3-month period that Defendants complain about is not only a short time period, but it also just happens to coincide with the COVID-19 pandemic.  As the Court is well aware, the COVID pandemic has significantly slowed down the pace of litigation and the pace of discovery production.  Defendants appear to hold Coons to a higher standard than most by ignoring the obvious fact that COVID pandemic has almost certainly impacted the pace of discovery and production.

4.    As previously stated, Coons is not a party to this action – she is simply a non-party lay witness with no staff or other assistance to help her search for, identify, and produce thousands of emails and text messages sent and received over the last several years.  Nevertheless, Defendants complain in their motion that they have attempted to contact the undersigned counsel for Coons by phone "multiple times," and have also sent eleven pieces of written correspondence. According to court document ECF 123-1, Defendants claim to have received "389 pdf documents" from Coons's response to the subpoena (sent to Plaintiff's counsel on August 27, 2019).  In response to Defendants' motion to compel received on April 24, 2020, Defendants immediately received ~2600 new documents (~5.81 GB) (or ~116,000 pages, given that a typical pdf page is ~50 KB).  Coons produced an additional ~400 documents by June 19, 2020.  Producing this magnitude of documents in response to the subpoena has required hundreds of hours of time and effort by Coons and has been excessively burdensome on Coons.

5.    Undersigned counsel for Coons was only retained by her on November 22, 2019, long after most of the discovery issues Defendants complain about

occurred. Nevertheless, counsel has replied to all written correspondence from the Defendants. It also bears noting that counsel is a solo practitioner with one support staff member who has been working remotely since March due to COVID concerns. In addition, undersigned counsel has a leadership role in the military with the South Carolina Air National Guard, which consumes a significant amount of time, especially in dealing with COVID. These are not excuses, but simply further explanation to confirm for the Court that Defendants' assertion of contemptuous behavior is not that at all, but instead simply a reality of the circumstances with which Coons is dealing. Coons has done and will continue to do her best to comply with the Court's order in a timely manner, given her time, financial, and staffing limitations.

6.    Defendants attempted to serve a subpoena for documents on Coons numerous times between March 14, 2019 and August 7, 2019, the date Coons finally acknowledged the subpoena by email. See ECF 101-5 and 101 at 2, fn 1. Plaintiff's counsel designated Coons as a "consulting, non-testifying expert" early in 2019. Thus, Defendants could have located Coons by contacting Plaintiff's counsel. Their failure to do so cannot now be grounds for a contempt motion against Coons. Numerous court documents show that Defendants had Coons's contact information (multiple email addresses and phone number) prior to discovery. Defendants decided to wait until July 31, 2019 to utilize either of those communication methods to contact Coons. Coons promptly responded to their first attempt to contact her via email on August 7, 2019. Coons is also very accessible to the public via social media. She has a large Twitter following, which allows anyone to send her a message. In fact, one of the attorneys for the Defendants proved he had no issue locating Coons on social media when he viewed Coons's LinkedIn profile on June 25, 2019.

ECF No. 172.

At the court's September 29, 2020 hearing, Defendants argued that Coons had been significantly involved with both the scientific and legal issues related to this case, including drafting an expert affidavit and other core documents. ECF No. 187, 57-58. Defendants recounted that the court's April 2, 2020 order required Coons to produce all documents in her possession that were responsive to the subpoena, including text messages and emails with their associated attachments. According to Defendants, the email attachments were critical because the attachments showed that

Coons, who has no formal training or education related to the scientific and medical issues in this case, was responsible for drafting the expert affidavits and portions of the complaint. Id. at 58-59. Defendants contended they were prejudiced by not having the affidavits drafted by Coons to compare with the final versions. Defendants stated this information would have allowed them to challenge the credibility of documents not prepared by experts in the field.

Defendants also stated they were unable to obtain text messages from Coons. According to Defendants,

> we've received three different stories about the status of the text messages. One, she has text messages and will cooperate to have them collected. Two, she already produced text messages. We know that is not true because no one here can point to a single text message produced by Coons. And three, she hasn't had text messages since 2018. We know this is also not true because we have the few messages from September 2019 between Plaintiff and Coons and those messages were identified during the Rule 34 inspection of Plaintiff's phone. We also have those AT&T records that I mentioned earlier.

Id. at 62-63.

Defendants stated that many of the documents Coons did produce were duplicative of each other and of the document production Defendants received in October 2019. Defendants argued that Coons is a key witness who affirmatively inserted herself into a prominent role in this litigation. Defendants asserted that Coons was in possession of highly relevant information that she refused to produce.

In response, Coons, through counsel, argued that Defendants had imposed an unduly burdensome and costly discovery request on Coons, a nonparty to the action. Coons' counsel argued that Coons had done the best she could and denied that Coons had engaged in blatant misconduct deserving of a finding of civil contempt. The court determined, however, that Coons had failed to

20

obey the court's order to provide appropriate discovery documents, and that Defendants had suffered a compensable loss in their efforts to serve a subpoena on Coons numerous times between March 14, 2019 and August 7, 2019, as well as having to file a motion to compel and motion for sanctions. The court granted Defendants' motion for an order to show cause.

On October 13, 2020, the court issued an order to show cause directing Coons to provide the court, on or before October 16, 2020, all written documentation or evidence as to why she should not be held in contempt for failing to fully comply with the court's April 2, 2020 order and Defendants' subpoena for documents served on her on August 8, 2019. The order contained the following language:

> **LAUREL COONS IS CAUTIONED THAT FAILURE TO COMPLY WITH THE WITHIN ORDER COULD FURTHER SUBJECT HER TO PENALTIES FOR CONTEMPT.**

ECF No. 192.

On October 16, 2020, Coons' counsel moved that Coons' response to the court's October 13, 2020 order be held in abeyance for thirty days pending Defendants' inspection of documents produced by Coons. The court granted the motion on October 16, 2020.[11] Coons did not file a timely response to the court's October 13, 2020 order to show cause.

In their motion for attorney's fees against Coons, Defendants reiterate the actions they contend demonstrate Coons' contempt for the judicial process. Defendants seek an award of attorney's fees of $36,174.00. In support of their motion, Defendants' counsel inform the court that the following fees were billed to and paid by Defendants to Wyche in conjunction with their

---

[11]On October 20, 2020, the court held a hearing on motion for summary judgment filed by Defendants on February 10, 2020. The court granted Defendants' motion for summary judgment on November 5, 2020.

representation:

| ATTORNEYS | YEAR OF PRACTICE | HOURS WORKED | BILLED PER HOUR | BILLED AMOUNT |
|---|---|---|---|---|
| WALLACE K. LIGHTSEY | 1986 | 8.7 | $435 | $ 3,784.50 |
| JOHN C. MOYLAN | 1988 | 4.7 | $415 | $ 1,950.50 |
| RACHAEL L. ANNA | 2007 | 62.1 | $350 | $21,735.00 |
| LUCY DINKINS | 2013 | 4.8 | $300 | $ 1,440.00 |
| PARALEGALS | | | | |
| MARY B. RAWLS | | 31.6 | $160 | $ 5,056.00 |
| LARRY ROBERSON | | 7.8 | $160 | $ 1,248.00 |
| SARAH B. DAVIS | | 6.0 | $160 | $   960.00 |
| TOTAL | | | | $36,174.00 |

As with their motion for attorney's fees and costs from Plaintiff, Defendants submit a loadstar summary. Because many of the arguments already have been presented above, the court will recite below only those factors that differentiate Defendants' motion for attorney's fees against Coons from their motion for attorney's fees against Plaintiff and Plaintiff's counsel.

1.    Reasonableness of the rates.  (Same argument as previously made.)

2.    Reasonableness of the hours worked.  Defendants state the number of hours worked was the result of Coons' efforts to frustrate, delay, and conceal information in this case. According to Defendants, Plaintiff understood the consequences of not producing documents pursuant to subpoena, including the possibility that she could be held in contempt. Nevertheless, she disregarded the subpoena and violated a court order compelling the production of documents as well as an order to show cause why she should not be held in contempt.

3.    Twelve Factor Test.

a.    Time and labor expended.  Defendants's counsel state that attempted to serve

22

a subpoena for documents on Coons over a dozen times between March 14, 2019 and August 7, 2019, the date Coons acknowledge the subpoena via email.  According to Defendants,

> A process server attempted numerous times to serve Coons between March 14 and March 23 but was unable to do so; the Wake County, North Carolina Sheriff's Office attempted but was unable to serve Coons between April 11 and 24; a private investigator attempted but was unable to serve Coons between May 21 and June 17; a subpoena sent by certified mail on June 24 was returned unclaimed; a subpoena sent via Federal Express was never signed for after three attempts; a private investigator attempted but was unable to serve Coons again on July 19; a seventh subpoena was sent to Coons via email on July 31.

ECF No. 211, 12.

Defendants contend that Coons continued a pattern of evasion after she was served with the subpoena by missing numerous deadlines in September and October 2019 to respond to the subpoena; representing she would supplement her response but failing to do so; refusing to produce responsive documents after being ordered to by the court; and producing duplicative and incomplete documents.  Defendants' counsel state that the hours billed could have been avoided had Coons simply complied with the subpoena.

        b.    <u>Novelty and difficulty of the questions raised</u>.  Defendants assert that attempting to enforce compliance with a subpoena for twenty months is novel to Defendants' counsel.  Defendants state that the issues required a close examination of the facts and the documents produced to identify the recurring deficiencies, and that Coons' refusal to cooperate increased the difficulty and amount of time needed to pursue relevant information.

        c.    <u>Skill required to properly perform the legal services</u>.  Defendants' counsel contend that they utilized technology applications to establish that Coons intentionally withheld information and repeatedly produced duplicate information.

d.    <u>Preclusion of other employment opportunities</u>.  Defendants' counsel again state this is not a significant factor in this case.

e.    <u>Customary fee for such services</u>.  (Same argument as previously made.)

f.    <u>Whether the fee is fixed or contingent</u>.  Defendants' counsel again state this is not a significant factor in this case.

g.    <u>Time limitations imposed by client or circumstances</u>.  Defendants' counsel contend that they were constrained in their preparation for Coons' deposition held on December 19, 2019 by not having the documents requested in the subpoena that had been served four months before the deposition.

h.    <u>Amount in controversy and the results obtained</u>.  Defendants' counsel note they successfully prosecuted the motion to compel and motion to show cause against Coons.

i.    <u>Experience, reputation, and ability of the attorneys</u>.  (Same argument as previously made.)

j.    <u>Undesirability of the case</u>.  Defendants state that they could not anticipate they would have to pursue a critical witness for nearly twenty months to produce relevant materials, or that Coons would "show utter disregard for the Court's authority and intentionally obfuscate and obstruct the judicial process."  ECF No. 211, 16.

k.    <u>Nature and length of the professional relationship</u>.  Defendants again state that Wyche has represented Defendants since 2015.

l.    <u>Fee award in similar cases</u>.  Defendants recount numerous cases wherein awards of attorney's fees were granted when an individual failed to comply with court orders.

24

B.     Coons' Response in Opposition

Coons filed a lengthy pro se response to Defendants' motion for attorney's fees that the court will construe in part as Coons' untimely response to the order to show cause. The mitigating arguments Coons offers are that (1) she complied with discovery requests by providing information to Plaintiffs' attorneys that, unknown to her, was not disclosed to Defendants; (2) she was not made aware of her obligations regarding ESI; (3) she lacked time and resources to collect her research and correspondence regarding this litigation; (4) she was not informed of motions and orders pertinent to her personally; (5) she was precluded from responding to allegations made against her. With respect to the order to show cause, Coons states:

> On October 12, 2020, [Plaintiff] sent me the transcript from the September 29, 2020 hearing (ECF 187). This was the first time I recognized Judge Seymour wanted me to demonstrate why I should not be held in contempt (ECF 187). On October 13, 2020, Defs. emailed Bowers to say all they wanted were my text messages, Bowers emailed me to ask if I had them (Ex. 60). Thus, Defs. wasted hundreds of hours of my time in 2020 requesting: (1) documents in native format; (2) records after August 2019; (3) documents withheld by Pl.'s counsel as privileged; (4) communications with Pl.'s attorneys; (5) email communication with third parties (ECF 168-2, P.2, 30, 71), when all they really wanted was (6) text messages. This is especially interesting given that on June 20, 2020, **Defs. claim the documents sought by Defs. are essential to the preparation of their defense (ECF 168)**, on July 13, 2020, **Defs. claim they urgently need these documents for preparing their defense in this lawsuit (ECF 174)**, and on September 29, 2020 **Defs. claim the reason that we wanted the natives is because those attachments are critical (ECF 187, P.68).**
>
> I replied to Bowers I had already sent him all text messages (Ex. 60). Bowers asked me when I sent him the text messages (Ex. 60). I re-sent my October 2, 2020 email to Bowers (Ex. 61). Bowers asked if he could send the link to Defs. (Ex. 60). I said yes, and reminded him to tell Defs. to come get my physical files and please keep all nonrelevant text messages confidential (Ex. 60). On October 14, 2020, Bowers sent a draft of his reply to Defs. and said this should put the whole issue to rest (Ex. 62). The decision to not respond to my "Show Cause Response" due on November 16, 2020 was not my decision. I repeatedly asked for permission to reply to the Court.

ECF No. 224, 24 (emphasis in original).

25

According to Coons:

At this point Defs. have: (1) accused me of evading a subpoena without providing any supporting evidence (proving I am not at my house does not prove I am evading a subpoena); (2) misrepresented what was in my August 27, 2019 production (Defs. were aware that I produced far more than the 389 or 405 files Defs. received from Pl.'s counsel in October 2019); (3) accused me of not responding to Defs.' Motion to Compel (a motion that was not addressed to me nor was it sent to me by Pls., Defs., or the Court); (4) misrepresented what was in my April 25, 2020 production (Defs. claimed I produced mostly the same documents which I had already produced on October 22, 2019); (5) misrepresented what was in my May and June 2020 production (Defs. claim I refused to produce email communications in native format); (6) misrepresented what was in my October 2, 2020 production (Defs. claim significant discrepancies in another incomplete production); and (7) published dozens of false, defamatory and slanderous statements about me in numerous public court documents. [Plaintiff] once mentioned that Pl.'s counsel referred to me as "Defs.' favorite punching bag" in a court document. That's accurate.

ECF No. 224, 25.

Specific to Defendants' motion for attorney's fees, Coons challenges Defendants' entry for a 0.7 hour telephone conference between Mr. Moylan and Coons' counsel on November 22, 2019. ECF No. 211-6, 2. Coons states that she doubts this discussion included anything about the motion to compel responses from Coons to the subpoena for documents. Coons asserts that she was unaware of the existence of Defendants' November 12, 2019 motion to compel until April 24, 2020, after the court granted Defendants' motion on April 2, 2020. Coons further challenges 2.4 hours listed by Mr. Moylan for "[c]orrespondence with Mr. Cranshaw, Mr. Bowers and other lawyers re: outstanding discovery issues" on January 6, 2020. Id. Coons asserts that her counsel assured her the email string found at ECF No. 211-7 comprises the only communications he had with Defendants that day.

Coons concludes:

The record and chronology in this response show I made a full and complete good

faith effort to produce an extraordinary number of documents, as fast as I reasonably could, as soon as I received Defs.' requests. I am an individual, not a legal office. Some documents could not be produced because I did not have access to them. Based on Defs.' own representations, it appears Defs. requested so many records that they even lost track themselves of what had or had not been requested and produced. Defs. are supposed to reimburse me for the time, effort, and additional expenses producing all these materials has cost me (ECF 168-2, P.37) (Ex. 125). As of the present date, I have not been paid for my labor or expenses. This has been an obscene amount of work (hundreds of hours) in producing documents for the subpoena, acquiring legal counsel when Defs. recklessly provided the link to my entire subpoena production in public court documents, meeting Defs.' endless number of demands, purchasing and reading all the court documents, responding to hundreds of pages of false claims etc. This essentially amounted to harassment of me when I was only trying to establish scientific truth and verify clinical accuracy of a story with a very tragic end. I had nothing to gain financially or professionally from my role, and no conflicts of interest other than helping a friend. I have the deepest respect for the entire judicial process. I did my very best to participate in that process to ensure that CM's story received a fair and honest hearing in the Court.

ECF No. 224, 35.

C.    Defendants' Reply

Defendants argue that Coons does not address the motion for attorney's fees, but attempts to relitigate the underlying contempt motion and merits of the case. Defendants recount events they say demonstrate Coons has not acted in good faith, but, the contrary, made intentional, strategic decisions to withhold materials requested by Defendants:

August 1, 2019: Coons and Plaintiff exchanged at least 1,220 text messages and hundreds of emails. ECF 164-28.

July 31, 2019: Coons is served with the subpoena by email after five months of trying to serve her in multiple locations. ECF 101, at 2 and FN 1; 224-3. Contrary to her current protestations, the facts show clearly that she deliberately evaded service of the subpoena for months. ECF 101-5.

August 5, 2019: Plaintiff testified that she communicates with Coons "only when it relates to the case[.]" ECF 101-17, at 7. Thus, all of the 1,220+ text messages and hundreds of emails with Coons were relevant to this action.

**October 22, 2019:** Initial production by Coons of documents in response to the subpoena. ECF 101, at 4.

**November 12, 2019:** Defendants filed a motion to compel a complete response from Laurel Coons to the subpoena for documents. ECF 101. Defendants' motion sought the production of Coons's text messages (ECF 101, at 5-7), and emails produced in native format with their corresponding attachments (ECF 101, at 6-8, 10).

**December 20, 2019:** During her deposition, Coons testified that:

> • **Relevant text messages were stored on her iPhone** (ECF 168-4, at 3, Tr. 40:9-41:2);
>
> • **She had discussed the status of her text messages with Plaintiff's counsel but had not pursued collecting them for her subpoena response** (ECF 168-4, at 3, Tr. 41:18-48:22);
>
> • She understood that could be held in contempt by the Court for failure to respond to the subpoena (ECF 211-2, at 3, Tr. 16:6-24); and
>
> • She agreed to cooperate with Defendants in the collection of the relevant text messages (ECF 168-4, at 8, Tr. 75:16-76:17).

**March 6, 2020 to June 30, 2020:** Coons and Plaintiff exchanged over 650 additional text messages about the litigation. These messages (but not the prior ones) were later produced to Defendants on October 14, 2020, approximately six months after being so ordered by the Court. Exhibit 1 (excerpts from Coons's text messages about the case).

**April 2, 2020:** The Court granted Defendants' motion to compel a complete response from Laurel Coons to subpoena for documents. ECF 162.

**April 24, 2020:** Coons provided Defendants with a link to a Dropbox folder containing approximately 2600 documents, which included multiple versions of the **same documents that were previously produced** to Defendants on October 22, 2019 – indeed the same documents that were the subject of Defendants' motion to compel. ECF 224-22 ("Here is the link that was previously sent to Amy's attorneys."); 224-23;

174, at 2-4.

**April 24, 2020 to
June 2020:**
Coons produced some new documents, including (a) a copy of Defendants' document production – which she had no right to receive or be in possession of pursuant to the Confidentiality Order (*see* ECF 123-1 at 18, 31-32 and ECF 160 at 14-15); (b) over a thousand pictures of the decedent; (c) documents that were identified on Coons's privilege log by Plaintiff's counsel but withheld from the production of Coons's documents made on October 22, 2019; and (d) a selection of emails in native format that Coons had received. ECF 174, at 2-4.

Coons's productions during this period **did not contain the key documents at issue in the motion to compel** filed against her and that Defendants had been seeking since serving her with the subpoena on July 31, 2019. Her productions failed to contain (1) **any** text messages at all; (2) emails in native format (with attachments) with various third parties with whom Coons has regularly communicated with during the course of this litigation; and (3) emails in native format (with attachments) sent by Coons, including Coons's email attaching drafts the expert affidavits, pleadings, and other documents.

**May 5, 2020:**
Mr. Bowers informed Defendants: "Dr. Coons believes that she already produced all of the text messages in her possession." ECF 225-4. At this point, Coons had not produced a single text message. Mr. Bowers also represented that Coons would produce the requested emails in native format within 10-14 days. *Id.*

**June 3, 2020:**
Mr. Bowers informed Defendants that, contrary to her deposition testimony, Coons did not have any text messages. ECF 225-10.

**June 4, 2020:**
Defendants notified Coons of the deficiencies with her subpoena response, as noted above. ECF 168-2, at 70-72. The deficiency letter provided numerous examples of the documents with the missing attachments that Defendants were seeking. ECF 168-2, at 78-99.

29

**June 12, 2020:**      Coons reaffirmed her claim to Mr. Bowers that "I don't have any text messages regarding the lawsuit." ECF 225-13.

**June 22, 2020:**      Defendants filed the motion to show cause why Coons should not be held in contempt of Court. ECF 168.

**July 6, 2020:**      Coons responded to the motion to show cause. ECF 172.

**September 29, 2020:**      The Court held a hearing on the motion to show cause at which Coons's attorney at the time was present and made argument on her behalf. At the conclusion of the hearing, the Court held that Coons "failed to obey the Court's order to provide the appropriate discovery documents." ECF 211-4, at 3, Sept. 29, 2020 Hearing Tr. 70:7-9. The Court granted the motion to show cause. ECF 182.

**October 13, 2020:**      The Court ordered Coons to show cause why she should not be held in contempt and explicitly warned that "**LAUREL COONS IS CAUTIONED THAT FAILURE TO COMPLY WITH THE WITHIN ORDER COULD FURTHER SUBJECT HER TO PENALTIES FOR CONTEMPT**." ECF 192, at 2 (all capital letters, boldface, and underlining in original).

**October 14, 2020:**      After more than a year, and despite **repeatedly denying their existence**, Coons produced (1) text messages dated between March 6, 2020 and September 30, 2020 (but none before March 6 despite acknowledging in her deposition on December 20, 2019, that she had text messages relating to the case on her iPhone at that time (Exhibit 1; *see also* ECF168-4, at 3, Tr. 40:9-41:2; ECF 225-32 ("I was clear in my deposition that I did not know the setting of my messages in my phone, other than I knew there was a lot of text messages from Amy, so much that you aren't able to scroll to the beginning to figure out when they start.")); and (2) a fraction of the emails that Coons had sent to recipients in native format. ECF 225-32. The production showed that Coons exchanged hundreds of text messages about the case prior to Defendants' filing the motion to show cause on June 22, 2020. Exhibit 1.

**November 16, 2020:**      Coons failed to respond to the Court's Order to show cause why she should not be held in contempt dated October 13,

2020, by the deadline, or at any time after the deadline.

**November 24, 2020:** Defendants filed the petition for fees against Laurel Coons. ECF 211.

ECF No. 229, 4-7 (emphasis in original).

D.    Disposition of the Motion

Coons is clearly an intelligent, highly educated person.  It strains the court's credulity that she was simply an unsophisticated person at the mercy of the attorneys in this case.  The court concludes that she has failed to establish why she should not be held in contempt.  The court finds that Coons acted in bad faith and should be deterred from future non-compliance, should the situation arise.  However, the court finds that Defendants suffered limited prejudice because they were able to prevail on summary judgment despite Coons' recalcitrance.  The court finds an award of attorney's fees to be an appropriate sanction.

The following time entries are disallowed.  Regarding reductions in time for Ms. Anna and Ms. Rawls, the court finds that, based on the number of pages in the transcript devoted to the motion for an order to show cause, one-half hour should be allotted for oral argument.

| | |
|---|---|
| Mr. Moylan: | Entry 23 on ECF No. 211-6, 2<br>2.4 x $415 = $996.00 |
| Ms. Anna: | Entry 15 on ECF No. 211-6, 6<br>2.0 x $350.00 = $700.00 |
| Ms. Rawls: | Entry 16 on ECF No. 211-6, 6<br>1.8 x $160.00 = $288.00 |
| Mr. Lightsey: | Entry 6 on ECF No. 211-6, 7<br>0.5 x $435.00 = $217.50 |
| Ms. Dinkins: | Entry 7 on ECF No. 211-6, 7<br>0.5 x $300.00 = $300.00 |

The revisions made by the court result in attorney's fees of $33,672.50 ($36,174.00 - $996.00 - $700.00 - $288.00 - $217.50 - $300.00).  Because Defendants were not prejudiced at trial, the court reduces the attorney's fee award against Coons to $30,000.00.  Cooks is directed to pay Defendants attorney's fees in the amount of $30,000.00.

III.

For the reasons stated, Defendants' motions for attorney's fees (ECF Nos. 195 and 211) are **granted** in the amounts set forth above.  The court takes notice that the parties raised a number of arguments not set forth in this order.  The court has not considered those arguments in determining the attorney's fees awards.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 11, 2021.